# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TREVIS CALDWELL,**

       **Plaintiff,**

**v.**                                             **Civil Action No. 1:09cv80**
                                                     **(Judge Keeley)**

**HARLEY G. LAPPIN, MR. ROBINSON,
JAMES CROSS, DELBERT SAUERS,
JOE DRIVER, SALAMI, UNKNOWN
NAMED CASE MANAGER, UNKNOWN
NAMED CAPTAIN, UNKNOWN NAMED
SIS LIEUTENANT AND THE FEDERAL
BUREAU OF PRISONS,**

       **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I.  Procedural History

The *pro se* plaintiff initiated this case on June 16, 2009, by filing a civil rights complaint against defendants Lappin, Robinson and Cross. Because his claims allege a violation of his constitutional rights by federal employees, the plaintiff's complaint arises under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (authorizing suits against federal employees in their individual capacities). On August 28, 2009, the plaintiff amended his complaint to include the other defendants. The plaintiff has been granted permission to proceed as a pauper and paid an initial partial filing fee on September 8, 2009. This case is before the undersigned for an initial review and report and recommendation pursuant to 28 U.S.C.§§ 1915(e) and 1915A and LR PL P 83.01, et seq.

### II.  The Plaintiff's Contentions

In the complaint, the plaintiff asserts that he was moved to USP-Hazelton in March of 2008. He arrived at 11:00 p.m. and was secured in his cell. At 6:00 a.m., the cell doors were unlocked and the plaintiff was approached by another inmate. The other inmate advised the plaintiff to meet him in the recreation department after breakfast. After breakfast, the plaintiff went to the recreation department with the belief that he was to meet people. In fact, when he arrived, the plaintiff was introduced to several people. However, the plaintiff was then approached by an inmate he did not recognize and assaulted. The plaintiff was struck in the face and head several times until staff intervened. The plaintiff was taken to medical for an examination and then to the Special Housing Unit ("SHU"). The plaintiff was later served with an incident report which identified his attacker as Michael Gignac. The plaintiff asserts that he testified against Mr. Gignac in a prior case, there was a separation order in place to keep the two apart and he was not supposed to be in the same prison as Mr. Gignac.

In his amended complaint, the plaintiff provides additional information as to his relationship with Mr. Gignac and why he was transferred to USP-Hazelton. Specifically, the plaintiff asserts that while a juvenile, he cooperated with the federal government by testifying against Mr. Gignac. The plaintiff was released from that sentence in 1999, but later indicted on new charges in 2002. The plaintiff is currently in custody serving an 18 year, 7 month sentence in the 2002 case. Moreover, during his 2002 criminal proceedings, the plaintiff asserts that his Presentence Report ("PSR") outlined his prior cooperation and that the PSR is a part of his inmate file, the contents of which are known to BOP officials.

The plaintiff further asserts that he was originally designated to the Allenwood Correctional Institution in White Deer, Pennsylvania. He was later moved for his safety to the Federal

Correctional Institution in Ray Brook, New York.

In March of 2008, the plaintiff was involved in a fight with another inmate. As a result, defendant Salami initiated a disciplinary transfer for the plaintiff. The plaintiff explained to defendant Salami that he would likely be harmed if transferred to another facility. However, defendant Salami submitted the plaintiff's disciplinary transfer anyway. The plaintiff's transfer was approved by defendant Sauers who then designated the plaintiff to USP-Hazelton. Just prior to his transfer, defendant Salami allegedly told the plaintiff, "We'll see how tough you are now."

Upon his arrival at USP-Hazelton, the plaintiff was interviewed by an unknown named SIS Lieutenant. The plaintiff told this SIS Lieutenant that he had previously cooperated with law enforcement and specifically identified Mr. Gignac by name. The SIS Lieutenant informed the plaintiff that Mr. Gignac was incarcerated at USP-Hazelton and that he would have to speak with then Warden, Joe Driver. The plaintiff was later informed by the SIS Lieutenant that there were no beds available segregation and that he would have to be temporarily housed in the general population. The plaintiff was escorted to his cell at 11:00 p.m.

The next morning, the plaintiff left a note which requested a meeting with Warden Driver or his case manager. The plaintiff alleges that both refused to see him. It was later that day that he was assaulted by Mr. Gignac.

Based on the factual background provided by the plaintiff, he contends that the defendants were deliberately indifferent to his safety by placing him in a facility with Mr. Gignac and that he suffered serious injury as a result. The plaintiff further asserts that all of the defendants were aware of his prior cooperation with the government and that he was to be separated from Mr. Gignac. Despite this knowledge, the plaintiff asserts that the defendants failed to take reasonable steps to

ensure his safety, resulting in the attack by Mr. Gignac and the plaintiff's injuries. The plaintiff also asserts that the defendants continue to expose him to a substantial risk of harm by failing to house him in a safe environment. The plaintiff asserts that his claims are exhausted.

### III. Relief Sought

In the complaint, the plaintiff states simply that he would like the Court to award him money damages in the amount of $500,000. In the amended complaint, however, the plaintiff seeks more specific relief. The plaintiff seeks:

(1) compensatory damages of $10,000;

(2) punitive damages of $50,000 as to defendant Salami, $50,000 as to defendant Sauers, $125,000 as to defendant Driver, and $75,000 as to the unknown named defendants, for a total of $400,000;[1]

(3) unspecified declaratory relief; and

(4) injunctive relief which prevents the defendants from being deliberately indifferent to his safety and others with identifiable risks of harm.

### IV. Analysis

#### A. Personal Jurisdiction

In order for a court to hear a case, the court must have both subject matter jurisdiction and personal jurisdiction. Pursuant to 28 U.S.C. §1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Based on the allegations in the complaint, the court has subject matter jurisdiction because the plaintiff, a federal inmate, alleges an Eighth Amendment violation against federal employees.

---

[1] The requested damages actual total $300,000.

For a district court to assert personal jurisdiction over a nonresident defendant, two

conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm

statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with

Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church

of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir.2001). The West Virginia long-arm statute, as

contained in W.Va. Code §56-3-33(a), provides:

> (a) The engaging by a nonresident, or by his or her duly authorized agent, in
> any one or more of the acts specified in subdivisions (1) through (7) of this
> subsection shall be deemed equivalent to an appointment by such nonresident
> of the secretary of state, or his or her successor in office, to be his or her true
> and lawful attorney upon whom may be served all lawful process in any
> action or proceeding against him or her, in any circuit court in this state,
> including an action or proceeding brought by a nonresident plaintiff or
> plaintiffs, for a cause of action arising from or growing out of such act or
> acts, and the engaging in such act or acts shall be a signification of such
> nonresident's agreement that any such process against him or her, which is
> served in the manner hereinafter provided, shall be of the same legal force
> and  validity as though such nonresident were personally served with a
> summons and complaint within this state:
>  (1) Transacting any business in this state;
> (2) Contracting to supply services or things in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this
> state if he or she regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from goods used
> or consumed or services rendered in this state;
> (5) Causing injury in this state to any person by breach of warranty expressly
> or impliedly made in the sale of goods outside this state when he or she might
> reasonably have expected such person to use, consume or be affected by the
> goods in this state: Provided, That he or she also regularly does or solicits
> business, or engages in any other persistent course of conduct, or derives
> substantial revenue from goods used or consumed or services rendered in this
> state;
> (6) Having an interest in, using or possessing real property in this state; or
> (7) Contracting to insure any person, property or risk located within this state
> at the time of contracting.
> (b) When jurisdiction over a nonresident is based solely upon the provisions
> of this section, only a cause of action arising from or growing out of one or

more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

Regarding personal jurisdiction, the Southern District of West Virginia has succinctly found:

[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir.1997).

To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp. 2d 851, 854 (S.D. W.Va. 2004).

Moreover, pursuant to 28 U.S.C. §1915, the Court can *sua sponte* raise the issue of personal jurisdiction. See Hall v. Herman, 896 F. Supp. 588, (N.D. W.Va. 1995).

With regard to the actions of defendants Robinson, Sauers and Salami, the plaintiff has failed to assert any contact by these defendants with the state of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause. Defendant Salami is employed by the BOP at FCI-Ray Brook and presumably resides in New York. Defendants Robinson and Sauers are employed by the BOP at the Designation and Sentence Computation Center and presumably reside in Texas. Thus, based on the complaint, the Court cannot exercise personal jurisdiction over these

defendants as any action they took appears to have occurred solely in either New York or Texas, and not anywhere in West Virginia, and there is no indication that these defendants had any contact whatsoever with the State of West Virginia. Consequently, the complaint against defendants Robinson, Sauers and Salami should be dismissed because the court lacks personal jurisdiction over these defendants. See Harris v. United States, 2002 WL 824277 (N.D. TX 2002)(unpublished).

**B.    Failure to Protect Claim**

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id* at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" *Id.* The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. *Id.* n. 3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

1.    Harley Lappin and James Cross

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall

contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends

. . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3)

a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the

pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald

statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe

Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations

omitted).

Moreover, liability in a Bivens case is "personal, based upon each defendant's own

constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation

omitted). Therefore, in order to establish liability in a Bivens case, the plaintiff must specify the acts

taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496,

501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some

sort of personal involvement on the part of the defendant and a causal connection to the harm alleged

must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior*

cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v.

Good, 423 U.S. 362 (1976).

Here, the plaintiff fails to assert any claim that defendants Lappin or Cross were personally

involved in the alleged violation of his constitutional rights. Instead, it appears that the plaintiff

merely names defendants Lappin and Cross in their official capacities as the Director of the Federal

Bureau of Prisons and the current Warden at FCI-Hazelton, respectively. Thus, any claims against

those defendants in their individual capacities should be dismissed. However, because the plaintiff

also seeks declaratory and injunctive relief, his claims against these defendants in their official

capacities should remain and they should be made to answer the complaint in that respect.

      2.    The Federal Bureau of Prisons

A <u>Bivens</u> cause of action is only available against federal officers in their individual

capacities, and not the federal agency which employs the persons acting under federal law.  <u>See</u>

<u>FDIC v. Meyer</u>, 510 U.S. 471, 484-86 (1994) (refusing to find a <u>Bivens</u> remedy against a federal

agency); <u>see</u> <u>also</u> <u>Randall v. United States</u>, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under

<u>Bivens</u> is against federal officials individually, not the federal government.").  Thus, the plaintiff's

<u>Bivens</u> claims against the BOP must be dismissed.

      3.    Unknown Named Captain

As previously stated liability in a <u>Bivens</u> case is "personal, based upon each defendant's own

constitutional violations."  <u>Trulock v. Freeh</u>, 275 F.3d at 402.  Therefore, in order to establish

liability in a <u>Bivens</u> case, the plaintiff must specify the acts taken by each defendant which violate

his constitutional rights.  <u>See</u> <u>Wright v. Smith</u>, 21 F.3d at 501.  Some sort of personal involvement

on the part of the defendant and a causal connection to the harm alleged must be shown.  <u>See</u> <u>Zatler</u>

<u>v. Wainwright</u>, 802 F.2d at 401.

With regard to the Unknown Named Captain, the plaintiff states: "Defendants Driver and

Unknown Named Captain failed to take reasonable steps to prevent future assaults following

incidents occurring prior to Plaintiff's arrival to USP-Hazelton."  Amended Complaint (dckt. 18)

at 12.  The plaintiff makes no allegation that the Unknown Named Captain was personally involved

in the alleged violation of the plaintiff's constitutional rights.  In fact, he fails to allege that the

Unknown Named Captain knew his safety could be in jeopardy or that the Captain was involved in

any way with the sequence of events that lead to Mr. Gignac's assault on the plaintiff.  Rather, it

appears that the plaintiff complains of the way in which the Unknown Named Captain handled assaults that occurred prior to the plaintiff's arrival at USP-Hazelton. Thus, the Unknown Named Captain should be dismissed from this case.

4. Joe Driver, Unknown Named Case Manager and Unknown Named SIS Lieutenant

In his pleadings, the plaintiff asserts facts that, if true, could establish that these defendants were deliberately indifferent to his safety in violation of the Eighth Amendment. Thus, the undersigned recommends that these defendants be served with a copy of the complaint and be required to file an answer.

## V. Recommendation

For the reasons set forth in this opinion, the undersigned makes the following recommendations:

(1) Defendants Mr. Robinson, Delbert Sauers and Salami be **DISMISSED** for lack of personal jurisdiction;

(2) Defendant Federal Bureau of Prisons be **DISMISSED with prejudice**;

(3) Any individual capacity claims against defendants Harley Lappin and James Cross be **DISMISSED with prejudice**, but that those defendants be made to **ANSWER** the complaint as to any official capacity claims;

(4) Defendant Unknown Named Captain be **DISMISSED without prejudice** for the failure to state a claim for which relief may be granted; and

(5) The plaintiff's claims against defendants Joe Driver, Unknown Named Manager and Unknown Named SIS Lieutenant **PROCEED**, and that those defendants be **SERVED** with a copy of a sixty (60) day summons and the complaint through the United States Marshal Service.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: October 28, 2009.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE