# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TREVIS CALDWELL,**

        **Plaintiff,**

**v.**
                            **Civil Action No. 1:09cv80**
                            **(Judge Keeley)**

**HARLEY G. LAPPIN, MR. ROBINSON,
JAMES CROSS, DELBERT SAUERS,
JOE DRIVER, SALAMI, CASE MANAGER
PULICE, UNKNOWN NAMED CAPTAIN,
SIS LIEUTENANT H. KOBAYASHI AND
THE FEDERAL BUREAU OF PRISONS,**

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I.  Procedural History

The *pro se* plaintiff initiated this case on June 16, 2009, by filing a civil rights complaint against defendants Lappin, Robinson and Cross. [Dckt. 1]  On August 28, 2009, the plaintiff amended his complaint to include the other defendants. [Dckt. 18]

After payment of the initial partial filing fee, the undersigned conducted a preliminary review of the file and recommended the dismissal of several defendants and service upon the others. [Dckt. 33]  That recommendation was adopted in its entirety by the district judge on January 28, 2010. [Dckt. 39]

On July 1, 2010, the remaining defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. [Dckt. 75]  Because the plaintiff is proceeding without counsel, the Court issued a <u>Roseboro</u> Notice on July 30, 2010. [Dckt. 78]  The plaintiff filed a response to the defendants' motion on July 30, 2010 [Dckt. 81], to which the defendants replied on August 16, 2010

[Dckt. 82]. Accordingly, this case is before the undersigned for a report and recommendation on the defendants' motion and the parties' subsequent responses.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that he was moved to USP-Hazelton in March of 2008. [Dckt. 1 at 2] He arrived at 11:00 p.m. and was secured in his cell. Id. At 6:00 a.m., the cell doors were unlocked and the plaintiff was approached by another inmate. Id. The other inmate advised the plaintiff to meet him in the recreation department after breakfast. Id. After breakfast, the plaintiff went to the recreation department with the belief that he was to meet people. Id. In fact, when he arrived, the plaintiff was introduced to several people. Id. However, the plaintiff was then approached by an inmate he did not recognize and assaulted. Id. Specifically, he was struck in the face and head several times until staff intervened. Id. The plaintiff was taken to medical for an examination and then to the Special Housing Unit ("SHU"). Id. He was later served with an incident report which identified his attacker as Michael Gignac. Id. The plaintiff asserts that he testified against Mr. Gignac in a prior case, there was a separation order in place to keep the two apart and that he was not supposed to be in the same prison as Mr. Gignac. Id. at 2-3.

### B. The Amended Complaint

In his amended complaint, the plaintiff asserts that his claim arises under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and provides additional information as to his relationship with Mr. Gignac and why he was transferred to USP-Hazelton. [Dckt. 18 at 3-12] Specifically, the plaintiff asserts that while a juvenile, he cooperated with the federal government by testifying against Mr. Gignac. Id. at 4. The plaintiff was released

from that sentence in 1999, but later indicted on new charges in 2002.  <u>Id.</u>  The plaintiff is currently in custody serving an 18 year, 7 month sentence in the 2002 case.  <u>Id.</u>  Moreover, during his 2002 criminal proceedings, the plaintiff asserts that his Presentence Report ("PSR") outlined his prior cooperation with the government, and that the PSR is a part of his inmate file, the contents of which are known to BOP officials.  <u>Id.</u>

The plaintiff further asserts that he was originally designated to the Allenwood Correctional Institution in White Deer, Pennsylvania.  <u>Id.</u>  He was later moved for his safety to the Federal Correctional Institution in Ray Brook, New York.  <u>Id.</u>

In March 2008, the plaintiff was involved in a fight with another inmate.  <u>Id.</u> at 10.  As a result, defendant Salami initiated a disciplinary transfer for the plaintiff.  <u>Id.</u>  The plaintiff explained to defendant Salami that he would likely be harmed if transferred to another facility.  <u>Id.</u>  Defendant Salami submitted the plaintiff's disciplinary transfer anyway.  <u>Id.</u>  The plaintiff's transfer was approved by defendant Sauers who designated the plaintiff to USP-Hazelton.  <u>Id.</u>  Just prior to the plaintiff's transfer, defendant Salami allegedly told him, "We'll see how tough you are now."  <u>Id.</u>

Upon his arrival at USP-Hazelton, the plaintiff was interviewed by an unknown named SIS Lieutenant.  <u>Id.</u>  The plaintiff told the SIS Lieutenant that he had previously cooperated with law enforcement and specifically identified Mr. Gignac by name.  <u>Id.</u> at 11.  The SIS Lieutenant informed the plaintiff that Mr. Gignac was incarcerated at USP-Hazelton and that he would have to speak with then Warden, Joe Driver.  <u>Id.</u>  The plaintiff was later informed by the SIS Lieutenant that because there were no beds available segregation, he would have to be temporarily housed in the general population.  <u>Id.</u>  The plaintiff was escorted to his cell in the general population at 11:00 p.m. <u>Id.</u>

The next morning, the plaintiff left a note which requested a meeting with Warden Driver or his case manager.  Id.  The plaintiff alleges that both refused to see him.  Id.  It was later that day that he was assaulted by Mr. Gignac.  Id.

Based on the factual background provided by the  plaintiff, he contends that the defendants were deliberately indifferent to his safety by placing him in a facility with Mr. Gignac and that he suffered serious injury as a result.  Id. at 12.  The plaintiff further asserts that all of the defendants were aware of his prior cooperation with the government and that he was to be separated from Mr. Gignac.  Id.  Despite this knowledge, the plaintiff asserts that the defendants failed to take reasonable steps to ensure his safety, resulting in the attack by Mr. Gignac and the plaintiff's injuries. Id.  The plaintiff also asserts that the defendants continue to expose him to a substantial risk of harm by failing to house him in a safe environment.  Id.

As relief, the plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.  Id. at 8.

**B.    The First Report and Recommendation**

In the first Report and Recommendation ("R&R"), the undersigned noted that the plaintiff had failed to state a basis for his claims in his original complaint. [Dckt. 33]  Because the plaintiff alleged a violation of his constitutional rights by federal employees, the undersigned recommended that the plaintiff's claims be construed as arising under Bivens.  The plaintiff confirmed that his claims arise under Bivens in his Amended Complaint.

As to the individual defendants, the undersigned noted that defendants Robinson, Sauers and Salami did not have the type of contact with the state of West Virginia necessary for the Court to

exercise personal jurisdiction over those defendants.[1]  Id. at 4-7.  As to defendants Lappin and

Cross, the undersigned found that the plaintiff failed to assert that either defendant had any personal

involvement in the alleged violation of his constitutional rights.  Id. at 7.  Thus, the undersigned

recommended that they be dismissed from the case in their individual capacities.  Id.  However, the

undersigned found that the plaintiff's request for injunctive relief against those individuals in their

official capacities should proceed.  Id. at 7-8.

Next, the undersigned found that the BOP was not an appropriate defendant under Bivens

and recommended the dismissal of that defendant.  Id. at 8.  The undersigned also noted that the

plaintiff had failed to establish any personal liability on the part of the Unknown Named Captain and

recommended that he also be dismissed.  Id. at 8-9.  Nonetheless, the undersigned found that if the

facts asserted by the plaintiff were true, he may be able to establish that defendants Driver,

Unknown Named Case Manager and Unknown Named SIS Lieutenant were deliberately indifferent

to his safety in violation of the Eighth Amendment.  Id. at 10.  Therefore, the undersigned

recommended that those defendants be required to answer the complaint.  Id.

The plaintiff did not object to the R&R and it was adopted in its entirety on January 28,

2010. [Dckt. 39] Thus, the only defendants that remain in this case in their individual capacities are

Joe Driver, Unknown Named Case Manager and Unknown Named SIS Lieutenant.  Defendants

Lappin and Cross remain only in an official capacity to the extent that the plaintiff seeks injunctive

relief.

**C.**    **The Plaintiff's Motions to Amend To Add Names of Defendants**

---

[1]Defendant Salami is employed by the Bureau of Prisons ("BOP") at FCI-Raybrook in New
York.  Defendants Robinson and Sauers are employed by the BOP at the Designation and
Computation Center located in Grand Prairie, Texas.

On December 4, 2010, the plaintiff filed a motion in which he requested permission to amend the complaint to add the names of the two previously unidentified defendants. [Dckt. 37] Specifically, the plaintiff stated that the unknown named SIS Lieutenant is "Cross" and the unknown named case manager is "Polise."[2] Id. at 1-2. Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, the plaintiff's motion was granted and summonses were issued for those defendants. [Dckt. 46-48]

On March 25, 2010, the plaintiff filed a motion to amend one of the defendant's names. [Dckt. 55] In that motion, the plaintiff asserts that he was told by his case manager at FCI-Talladega that the unknown named SIS Lieutenant was named "H. Kobayashi" and not "Cross." Id. at 1. Therefore, the plaintiff requested permission to amend the name of that defendant. Id. at 1-2. The plaintiff's motion was granted and a summons was issued for Kobayashi. [Dckt. 56-57]

## C.   The Defendants Motion to Dismiss or for Summary Judgment

In their motion, the defendants first seek the dismissal of the plaintiff's complaint for the failure to exhaust administrative remedies. [Dckt. 76 at 8-11] In support of this argument, the defendants assert that although the plaintiff has initiated several administrative remedies during his incarceration with the BOP, he has failed to fully exhaust any of those claims. Id. at 9-10. With regard to the specific claims alleged in this case, the defendants assert that on April 24, 2008, the plaintiff filed a request for administrative remedy which sought transfer from USP-Hazelton because of the March 19, 2008 assault. Id. at 10. In addition, the plaintiff sought to have his incident report stemming from that event expunged. Id. The Warden granted the plaintiff's request because his

---

[2]In their memorandum in support of their motion to dismiss, the defendants note that the actual spelling of this defendant's name is "Pulice." Therefore, the Clerk is directed to make the appropriate correction to the docket.

transfer had already been approved and the incident report had already been expunged.  Id.  The defendants assert that this remedy did not, however, address the specific allegations made in the complaint against the individual staff members.  Id.  Because the remedy does not specifically allege a claim of deliberate indifference, the defendants contend that the plaintiff did not fully and properly exhaust his administrative remedies with regard to this claim.  Id.  Moreover, the defendants recognize that because the relief sought was granted, the plaintiff did not appeal this remedy to the Regional or Central Offices.  Id.

Second, the defendants assert that the plaintiff's claims against defendants Lappin and Cross are barred and should be dismissed.  Id. at 11-12.  Specifically, the defendants note that there is no remedy for official capacity claims under Bivens and that the United States has not waived sovereign immunity with respect to constitutional violations.  Id. at 12.

Third, the defendants assert that defendants Driver, Kobayashi and Pulice should be dismissed from this suit because the plaintiff has failed to show any personal involvement on the part of these defendants in the alleged violation of his constitutional rights.  Id. at 13.  These defendants assert that they had no part in the plaintiff's intake screening.  Id. at 13-14.  For instance, defendant Kobayashi asserts that he was not working on the night the plaintiff's intake screening was conducted.  Id. at 14.  Instead, the defendants assert that SIS Lieutenant J. Simmons was the SIS Lieutenant on shift at the time of the plaintiff's arrival.  Id.  In addition, defendant Driver asserts that he was not contacted about the plaintiff's placement in general population and that he did not receive the plaintiff's alleged "note."  Id. at 15.  Moreover, Defendant Driver asserts that his liability may not be premised solely upon his position as Warden of USP-Hazelton based on a theory of respondeat superior.  Id. at 16.  Last, defendant Pulice asserts that he was not the plaintiff's case

manager upon his arrival to USP-Hazelton, that he had no contact with the plaintiff prior to the assault, and that he ever received any "note" that the plaintiff alleges to have left for him.  Id.

Fourth, the defendants assert that they were not deliberately indifferent to the plaintiff's safety.  Id. at 17.  The defendants note that the plaintiff's intake screening was actually performed by Case Manager Christine Church ("Church").  Id. at 18, n. 10.  Moreover, even though  Church viewed the plaintiff's PSR, she did not note the request that the plaintiff be separated from Mr. Gignac.  Id.  The defendants note that Church is not, however, a party to this action, and even if she was, her failure to note the separation request was inadvertent and would not constitute deliberate indifference.  Id.  The defendants also note that the plaintiff was specifically asked during the intake process if he was to be separated from any particular inmates, and the plaintiff answered no.  Id. at 18.  The defendants also contend that the plaintiff has failed to produce any evidence that he informed anyone that he should not be in the general population or that he actually left a "note" for any of the defendants.  Id. at 19.

Finally, the defendants assert that they are entitled to qualified immunity.  Id. at 20-22.

**D.**    **The Plaintiff's Response to the Defendants' Motion**

In response to the defendants' motion, the plaintiff first asserts "it is obvious that the two names (SIS Lieutenant H. Kobayashi) and (Case Manage Polise) were the wrong names in plaintiffs' complaint." [Dckt. 1 at 1 ] (parenthetical in original).  He further asserts that the only time he met the unknown named case manager and unknown named SIS Lieutenant was at his intake screening.  Id.  Because he could not remember their names on his own, he had to rely on information provided to him by BOP officials.  Id. at 1-2.  Thus, the plaintiff asserts that any incorrect information given by him as to the names of these individuals was through no fault of his own.  Id. at 2.  Therefore,

he requests that SIS Lieutenant Kobayashi and Case Manager Pulice be dismissed as defendants in this action and that SIS Lieutenant J. Simmons and Case Manager Christine Church be substituted as the appropriate defendants. Id. at 2-3.

Second, the petitioner asserts that he has exhausted his administrative remedies. Id. at 3. The plaintiff acknowledges that exhaustion is mandatory prior to filing suit in federal court. Id. at 3-4. Moreover, he asserts that he did submit an informal request with staff concerning the incident of March 2008. Id. at 4. He further asserts that he filed a formal remedy with the Warden. Id. After that point, however, the plaintiff was transferred to another facility and he contends that he did not receive a response to his request. Id. In addition, the plaintiff asserts that once he arrived at his new destination, the time for filing an appeal had already passed and he would have been time-barred from proceeding further. Id. Therefore, the plaintiff asserts that he has exhausted those remedies which were available to him and contends that his case should proceed. Id. at 5-6.

Next, the plaintiff asserts that, according to the defendants, any BOP staff member who conducts intake screenings is required to successfully complete the Central Inmate Monitoring ("CIM") Certification Program. Id. at 7. The interviewer is also required to review the inmate's sentry records and the inmate's central file or his PSR before making a decision to place the inmate in the general population. Id. Furthermore, the plaintiff asserts that he alerted intake staff that he was a "CIM" inmate and that the information about his separation from Mr. Gignac was in his file. Id. at 7-8. Thus, he claims that the defendants knew of the circumstances that placed him in danger but chose to ignore it. Id. at 8-9. The plaintiff acknowledges that he did not mention his prior cooperation but claims that he did not do so because it was not in relation to his current charges. Id. at 9. Nonetheless, the plaintiff contends that identifying himself as a "CIM" inmate put the

defendants on notice that being put in the general population might be a risk to his safety.  Id.

Additionally, the plaintiff asserts that by alleging he has failed to state a claim, the defendants are in essence alleging that the events complained of do not violate the law.  Id. at 10. The plaintiff asserts that this contention is simply not true and cites caselaw in support of his claim that the defendants had a duty to protect him and that they failed to do so.  Id.  The plaintiff further asserts that he has provided more than enough evidence to support his claim that the defendants were deliberately indifferent to his safety.  Id. at 11.

Further, the plaintiff asserts that the defendants' motion for summary judgment cannot be granted as there are several issues of material fact that remain in dispute.  Id. at 11-12.  Finally, he asserts that the defendants are not entitled to qualified immunity.  Id. at 12.  The plaintiff attaches a declaration to his response which asserts that all of the information provided in his pleadings is true and correct.  Id. at 13-14.

**E.    The Defendants' Reply**

In their reply, the defendants address two issues raised by the plaintiff in his response. [Dckt. 82 at 1]  First, the defendants assert that the plaintiff's exhaustion argument is misplaced.  Id. at 2. The defendants assert that the plaintiff had ample opportunity to fully exhaust his administrative remedies and that he simply failed to do so.  Id. Moreover, they assert that neither a lack of response, nor the plaintiff's transfer is sufficient grounds to forego the entire administrative remedy process. Id. at 2-3.

Second, the defendants assert that the fact that the plaintiff may have told the intake screener that he was a "CIM" inmate is not enough to establish that the screener acted with deliberate indifference to his safety by failing to take note of that information or to further investigate it.  Id.

at 4-6.  Additionally, the defendants note that while the plaintiff's sentry records did have a warning about the plaintiff's prior juvenile history, those records were not on hand for the screener to review. Id. at 6.  Instead, those words were simply a warning to staff that certain portions of the plaintiff's criminal history record was subject to disclosure restrictions.  Id. at 6-7.  The warnings in no way alerted staff to the possibility that the plaintiff should be separated from another inmate.  Id. Therefore, the defendants assert that the plaintiff cannot show that they had a sufficiently culpable state of mind to state a successful claim of deliberate indifference.  Id. at 7.

### III.  Standard of Review

#### A.  Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief."

Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.    Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid

weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. **Analysis**

### A. **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516,

524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[3] and is required even when the relief sought is not available. <u>Booth</u> at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. <u>See</u> <u>Porter</u> at 524 (citing <u>Booth</u> at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." <u>See</u> <u>Booth</u> at 741 n. 6.

The Bureau of Prisons ("BOP") makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. <u>See</u> 28 C.F.R. § 542.10, <u>et</u> seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at USP-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies. <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 93-94 (2006) (the PLRA requires *full* and *proper* exhaustion).

In this case, the petitioner filed a formal remedy with the Warden on April 7, 2008, that read:

> On March 19th I arrived here at U.S.P. Hazelton. On March 20th I was eating breakfast when a (sic) inmate approached me and begun to assualt (sic) me. After we were restrained I recognized who he was. He was a co-defendant of mine who I had to testify against. I was not to be placed

---

[3] <u>Porter</u> at 524.

in the same (illegible) he was. We have separates/Simms (sic). All of this info is in 2 of my P.S.I.(s). My adult P.S.I. states me (sic) requesting to be placed at different places. It's on paragraph 15. My life was placed in grave danger. I was given a (sic) incident report for fighting. I was never able to fight back. He caught me by surprise. My head was down while he assualted (sic) me. He was released 2 days after he assaulted me. I would like to request a transfer A.S.A.P. and to have the incident report dismissed.

[Dckt. 76, Resp't Ex. 1 at Att. D]

In response to the grievance, the Warden found in pertinent part:

Our investigation indicates that you are awaiting a routine re-designation as of May 6, 2008. You subsequently will be transferred to a high security facility commensurate with your security needs. According to the Disciplinary Hearing Officer report, your incident report for fighting has been expunged.
Based upon the foregoing, it is our determination that the actions by staff were appropriate, and your request is approved as you have been initiated for transfer and your incident report for fighting has been expunged.
If dissatisfied with this response, you may appeal to the Mid-Atlantic Regional Director, Federal Bureau of Prisons, 302 Sentinel Drive, Suite 200, Annapolis Junction, Maryland 20701. Your appeal must be received in the Regional Office within 20 days of the date of the response.

Id.

Although the defendants are correct that the plaintiff's remedy to the Warden does not specifically allege that any particular BOP employee was "deliberately indifferent" to his safety, such specificity is not required for exhaustion purposes. See Jones v. Bock, 549 U.S. 199, 218 (2007) ("In Woodford, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative process in accordance with the applicable procedural rules,' 548 U.S. 88, – rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from

system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Thus, if the prison's procedures do not require the naming of particular officials, such is not a prerequisite to proper exhaustion.). The BOP's grievance procedures do not require that an inmate name a specific individual, nor that he or she allege the violation of a specific constitutional violation. See 28 C.F.R. §§ 542.10, et seq. Therefore, the plaintiff in this case was not required to specifically allege that the defendants were "deliberately indifferent" to his safety in order to properly exhaust that claim.

Here, as quoted above, the plaintiff stated in his grievance: "I was not to be placed in the same (illegible) he was. We have separates/Simms (sic). All of this info is in 2 of my P.S.I.(s). My adult P.S.I. states me (sic) requesting to be placed at different places. It's on paragraph 15. My life was placed in grave danger." This is, in essence, a claim that staff was deliberately indifferent to the plaintiff's safety. The fact that the plaintiff did not specifically use the words "deliberately indifferent" is inapposite. The basis for his claim was made and the Bureau was put on notice of that claim.

In addition, the only specific relief the plaintiff requested in his remedy, transfer and expungement of the incident report, were granted by the Warden. Therefore, there was no need for the plaintiff to appeal the Warden's decision any further. Thus, the Court is not convinced that the plaintiff's claim in this case is not fully and properly exhausted. Nonetheless, even assuming that full and proper exhaustion occurred in this case, the plaintiff cannot prevail on merits of his claim.

**B.   Merits of the Plaintiff's Failure to Protect Claim**

1.   Defendants Kobayashi and Pulice

As a preliminary matter, the plaintiff concedes that defendants Kobayashi and Pulice are not

proper defendants in this case. [Dckt. 81 at 1]  The plaintiff asserts that he relied upon information provided to him by BOP employees when naming these defendants as the Unknown Named SIS Lieutenant and the Unknown Named Case Manager.  Id.  Since the filing of the defendants' motion, however, the plaintiff recognizes that Kobayashi and Pulice are not the unknown named persons listed as defendants in this case.  Id.  Thus, he seeks their dismissal from this case and the substitution of the appropriate defendants – J. Simmons and Christine Church – identified through the defendants' motion to dismiss, memorandum in support and attached affidavits.

For the reasons given by the plaintiff, the undersigned recommends that defendants Kobayashi and Pulice be dismissed with prejudice as defendants in this action and that J. Simmons and Christine Church be substituted in their place as the Unknown Named SIS lieutenant and Unknown Named Case Manager, respectively.

2.  <u>Defendants Church, Simmons and Driver</u>

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  <u>Id.</u> at 834 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)).  "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that  the prison officials acted with "'deliberate indifference'  to inmate health or safety.'"  <u>Id.</u>  The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. <u>Id.</u> n. 3. However, the Supreme Court held that  "[a]  prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The following facts are not in dispute:

(1) While a juvenile, the plaintiff testified against his co-defendant, Michael Gignac.

(2) Due to his cooperation with the government in that case, the Court directed that the plaintiff be separated from Mr. Gignac during their incarcerations. This information was contained in various court records, including the plaintiff's PSR.

(3) The BOP has access to the plaintiff's court records and PSR.

(4) In 1999, the plaintiff was released from his juvenile incarceration.

(5) In 2002, the plaintiff was returned to federal custody with an 18 year, 7 month sentence.

(6) Although the plaintiff had no separation order in his 2002 case, the separation order from his juvenile case was still in effect.

(7) Upon his arrival at USP-Hazelton on March 18, 2010, defendant Church conducted the plaintiff's intake screening at approximately 9:45 p.m.

(8) During an intake screening, an inmate is asked a series of questions to determine whether he or she is suitable for placement in the general population.

(9) During the plaintiff's intake screening, he was asked whether there was any reason why he should not be placed in the general population, if he had assisted law enforcement in any way, if he had testified against anyone in court and if he is a member of a gang. The plaintiff answered no to all of these questions.

(10) The plaintiff was then asked if he was a CIM case and responded yes.

(11) Defendant Church conducted a review of the BOP's computerized inmate information database and found nothing that would indicate that the plaintiff had any separatees at USP-Hazelton.

(12) Defendant Church approved the plaintiff for general population.

(13) After the plaintiff's initial intake screening, a second intake screening took place with defendant Simmons.

(14) During the second intake screening, the plaintiff was again asked if he had ever testified against anyone or cooperated with the government or if he had ever provided information to law enforcement. The plaintiff told Simmons not in the case for which he was currently incarcerated.

(15) The plaintiff was escorted to a cell in general population at approximately 11:00 p.m. that night.

(16) Early the next morning, at approximately 8:19 a.m., the plaintiff was assaulted by inmate Michael Gignac.

(17) An investigation of the altercation concluded that the plaintiff and inmate Gignac should be separatees.

(18) The plaintiff thereafter remained in the Special Housing Unit at USP-Hazelton until his transfer on May 27, 2008.

Although there is some dispute with regard to other facts, *i.e.*, whether the plaintiff specifically mentioned Mr. Gignac's name to Simmons, whether the prior separation order was readily available to Church and Simmons at the time of the screenings, and whether Warden Driver was contacted at the time of screening, accepting the facts in the light most favorable to the plaintiff, it is clear that he has failed to establish that defendants Church, Simmons or Driver had the requisite state of mind to establish a claim of deliberate indifference. At best, the plaintiff has shown that defendant Church overlooked his separation status from Mr. Gignac. Even though that information was contained in the plaintiff's PSR, when questioned about his separation status, the plaintiff answered "no." The plaintiff's reasons for answering no (the separation order not being a part of his current charges) is largely irrelevant. The question is whether defendants Church, Simmons and Driver knew of an excessive risk to the plaintiff's safety and chose to ignore it. However, the evidence shows that at best, defendant Church was negligent during the intake screening process and that defendant Simmons did not have the authority to place the plaintiff in segregation upon his

arrival.[4]  Moreover, the plaintiff has failed to show that even if Warden Driver had been contacted about the plaintiff's safety issue prior to the assault, that the Warden was involved in the event in any way other than in a supervisory or official capacity.  Thus, the plaintiff cannot establish a claim of deliberate indifference against defendants Church, Simmons and Driver, and those defendants should be dismissed with prejudice from this case.

### 3.  Official Capacity Claims Against Defendants Lappin and Cross

The only claims which remain against defendants Lappin and Cross are official capacity claims to the extent that the plaintiff seeks injunctive relief.[5]  Otherwise, the plaintiff has no remedy against these individuals.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (a suit against government agents acting in their official capacities is considered a suit against the United States itself).

The standard for granting injunctive relief in this circuit is set forth in Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342 (4th Cir.2009).  As articulated in Real Truth, before a court may grant injunctive relief, the movant is required to establish "(1) that he is likely

---

[4]The plaintiff asserts that defendant Simmons knew that he should be separated from Mr. Gignac and disregarded his safety. [Dckt. 18 at 11]  The plaintiff further alleges that upon finding out this information, defendant Simmons contacted a captain and Warden Driver.  Id.  After consulting with these individuals, defendant Simmons told the plaintiff that he would have to temporarily be housed in the general population because there was no bed space available in segregation.  Id.  Construing these facts in the light most favorable to the plaintiff, it is clear that defendant Simmons was not deliberately indifferent to the plaintiff's safety.  Quite the opposite.  According to the plaintiff, defendant Simmons responded to his safety concerns and consulted his supervisors.  However, because of a lack of bed space, defendant Simmons was simply unable to accommodate the plaintiff in segregation at that time.  From these facts as provided by the plaintiff himself, it is clear that defendant Simmons did not disregard a risk to the plaintiff's safety.

[5]In fact, the plaintiff does not dispute that defendant Cross was not Warden of USP-Hazelton until October 12, 2008, well after the assault occurred, and well after the plaintiff's transfer to another facility.  Resp't Ex. 7 at ¶ 1.

to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." Id. at 346 (citations omitted).  Here, as noted above, the plaintiff cannot succeed on the merits of his claim, nor can he establish that he is likely to suffer irreparable harm if an injunction does not issue.[6]  Thus, injunctive relief is not appropriate and defendants Lappin and Cross should be dismissed with prejudice.

## V.   Recommendation

For the reasons stated, the undersigned recommends that:

(1) defendants Kobayashi and Pulice be dismissed with prejudice and J. Simmons and Christine Church be substituted as the appropriate defendants in this case; and

(2) the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Dckt. 75] be **GRANTED** and this case be **DISMISSED with prejudice** from the active docket of this Court.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any  objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

---

[6]The plaintiff has already been transferred from the facility where Mr. Gignac is housed.

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: September 16, 2010.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE